CASE 66—ACTION TO RECOVER DOWER—Nov. 27.

# McIlvain v. Scheibley & Others.

APPEAL FROM CAMPBELL CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

MARRIAGE—VALIDITY—CONSANGUINITY OF PARTIES—DOWER—WILLS—
ESTOPPEL—COURTS—FOREIGN LAWS—CONSTRUCTION.

Held: 1. Under Code Tennessee, section 5646, prohibiting a man from marrying or having carnal knowledge of his niece, and declaring that any person who shall violate such prohibition shall be guilty of incest, and punished therefor by imprisonment, such a marriage is void from the beginning, and the wife is therefore not entitled to dower.

2. The fact that an agreement between a man and woman legally incapable of marrying, because of consanguinity, to live together as husband and wife, had been executed and the husband had died, did not entitle the woman to dower in the husband's estate.

3. Where a testator had entered into an illegal contract of marriage with his niece, the fact that other legatees under his will had obtained probate thereof, and claimed under it, did not estop them to deny the rights of testator's widow under the will on the ground that the marriage was void *ab initio*.

4. Where a marriage between testator and his niece was prohibited by statute, the widow's attempt to renounce the provisions of testator's will bequeathing property to her was ineffectual for any purpose, and did not authorize her to claim statutory dower in his estate, since she was not the legal widow of the testator.

5. Where, in an action involving the validity of a marriage, the parties set out in an agreed statement of facts a compilation of the laws of another State, where the marriage was performed, and stated that such laws were all the laws of such State on the subject, and that such laws were correctly set forth in the pleadings, such statement authorized the court on appeal to construe such laws and determine their bearing on the issue presented.

C L. RAISON, JR., RAISON & AHLRING, AND HOLT, ALEXANDER & HOLT, ATTORNEYS FOR APPELLANT.

ALFRED B. BENEDICT, L. J. CRAWFORD, HOWARD DOUGLAS, AND GEO. WASHINGTON, FOR APPELLEES.

(No briefs on record.)

McIlvain v. Scheibley and others.

OPINION OF THE COURT BY JUDGE GUFFY—AFFIRMING.

In May, 1897, Thomas McIlvain died testate, domiciled in Campbell county, Ky., after having first made his last will, which was duly probated in the county court of Campbell county, in May, 1897. By the terms of said will all his property was devised to John B. Scheibley in trust to collect all rents, issues, and profits, and pay out of the net income a sum sufficient for the support of his widow, Catherine McIlvain, so long as she remained unmarried, and the remainder to his daughter, Clara Edwards, and his son, Franklin P. McIlvain, during their lives, and then to their children. In May, 1897, the appellant renounced the provisions of said will, and in the same month and year instituted this action against the appellees, seeking to recover her dower and distributable share as the widow of said decedent. It appears from the petition that the appellant and Thomas McIlvain were married in Chattanooga, Tenn., the 17th of December, 1895, where they were then residing, and afterwards continued to live together as husband and wife in the county of Campbell, Kentucky, from shortly after the time of their marriage until the death of said Thomas. The substance of the answer of appellees Edwards and McIlvain is that the said plaintiff and Thomas McIlvain were not residents of the State of Tennessee at the time of their alleged marriage, but their usual place of residence at that time and long prior thereto was in the State of Kentucky. It is further alleged that the plaintiff was a niece of decedent, being a daughter of a full sister of decedent; that, with the view of escaping the laws of the State of Kentucky prohibiting marriage between uncle and niece, the plaintiff and said decedent went to the State of Tennessee for the sole purpose of en-

tering into the contract of marriage. Defendants also pleaded section 3290, article 1, c. 1, tit. 4, of the Code of Tennessee, compiled by Milliken and Vertrees; also, section 3291 of said Code; also, section 3292,—and aver that by the terms of said statutes, which are quoted in the answer, the alleged marriage was absolutely void and of no effect, and that it was at said time well settled by the adjudication of the supreme court of said State that a marriage contrary to the provisions of said laws was absolutely void from the contracting of same. It is further alleged that said alleged marriage was absolutely void; that the plaintiff is not the widow of said decedent, and is not entitled to any part of said estate. The answer of appellee, Scheibley, is substantially the same as the answer of Edwards and McIlvain. By an amended answer some corrections were made as to the number of sections of the Tennessee statutes relied on in the former answer, as well as the further citation of other sections, which amended answer was taken as an amendment to the answer of Scheibley. That reply of the appellant denies that she and her husband, or either of them, with the view of escaping the laws of Kentucky, went to the State of Tennessee for the sole purpose of evading the laws of Kentucky in their marriage. She also denied that appellees had correctly quoted the Tennessee statutes in regard to marriage. It is also denied that at the time of said marriage, or any time, it was settled by the Supreme Court of Tennessee that a marriage contrary to said laws was or is absolutely or in any manner void from the contracting thereof; and it denies that such a marriage between herself and her deceased husband was at that time, or now is, void under the laws of the State of Tennessee, or that such marriages ever have been so adjudged by the supreme

court of that State. The second paragraph of the reply alleges that before and at the time of the marriage she and her husband agreed and contracted to become husband and wife, and in pursuance thereof license was duly and properly issued by the proper officer in Tennessee, and that the ceremony of marriage was duly performed by a person duly authorized so to do; that after said marriage, and up to the time of his death, she and her husband continued to live together as man and wife; that shortly after marriage they came to Newport, Ky., and there continuously resided until within a short time before the death of her husband, when they went to Florida, in which State they were at the time of his death; that during all this time they were living together as man and wife, and so regarded by their neighbors and friends, and she and her husband both believed that they were legally and lawfully married, and were in law and fact husband and wife, – and alleges they were in law and in fact husband and wife. The reply further shows that the children of decedent were well aware of the facts of the marriage, and the living together as husband and wife, and that appellees procured said will to be recorded; that the appellees took and accepted the terms of said will, and now claim thereunder by virtue of said will; that under the provisions thereof the executor and trustee was directed to make certain provisions for the support of this plaintiff as the widow of said decedent, and in probating the will, and accepting thereunder its terms, they all recognized this plaintiff as the legal and lawful widow of decedent, and entitled to her share in the estate as his widow; that at no time during the life of the decedent did the defendants, or any of them, make any objections to the marriage, or protest against the same, nor did either of them make

any attempt to take any steps towards contesting the validity or legality of the said marriage, or to have the same set aside and held for naught.   And plaintiff says that not until after she had refused to accept a small amount offered her to live upon, by the trustee and the said defendants, and had renounced the provisions of the will and elected to take under the law, as the widow of decedent, did they, or either of them, make any claim that plaintiff was not lawfully married to, and was not the lawful and legal widow of, the decedent husband, Thomas McIlvain.   All the foregoing facts are pleaded and relied upon as an estoppel and a bar to defendant's right to now question or assail the validity or legality of plaintiff's marriage.

After the issues were fully made up, and an agreement as to the evidence made and considered, the court adjudged that plaintiff take nothing by her petition, and dismissed the same, to which she excepted and prayed an appeal. which was granted.   Appellant also filed grounds, and moved for a new trial.   The substance of the grounds relied on for a new trial is that the judgment is contrary to the law and evidence; that the court erred in construing and determining the effect of the decisions of the supreme court of Tennessee introduced by the defendants in support of their defense.   The agreement as to the evidence is as follows·   "It is hereby agreed that a marriage license was issued to the plaintiff and to Thomas McIlvain, deceased, in Hamilton county, Tennesseee, by an officer authorized by the laws of said State to issue such licenses in cases where marriage might lawfully be contracted between the parties to it; that the plaintiff and said decedent went through a ceremony, the purpose of which was to make them husband and wife, and that said ceremony had

that effect, in law, provided the plaintiff and said decedent, as uncle and niece, might lawfully become husband and wife under the laws of Tennessee; that plaintiff and said decedent at the time of said ceremony, and thence until the death of said Thomas McIlvain, in May, 1897, were resident citizens of Campbell county, Ky., and lived and cohabited together as man and wife. It is further agreed that on the hearing of this cause the defendants may read in evidence, from any volume in which the same may be reported, the following cases, to wit: Pennegar v. State, 87 Tenn., 244; (10 S. W., 305); 2 L. R. A., 703; 10 Am. St. Rep., 648; State v. Bell, 7 Baxt., 10; 32 Am. Rep., 549; Carter v. Montgomery, 2 Tenn. Ch., 225; and Owen v. Bracket, 7 Lea, 448. Also, any other Tennessee cases, upon at least three days' notice thereof to the attorney for plaintiff." It was further agreed as follows: "It is hereby agreed by all the parties hereto that the Code of Tennessee, compiled by Milliken and Vertrees (being the same referred to in the pleadings), contains all the laws of said State upon the subject of marriage, as enacted by the General Assembly of said State, and that all of said statute laws are correctly set forth in the pleadings herein. This April 15, 1898."

The several sections of the Code of Tennessee referred to in the agreement aforesaid are as follows: Sections 5646-5648, article 1, chapter 8; also section 3290, chapter 1, title 4. And they read as follows:

"Section 5646. No man shall marry or have carnal knowledge of his mother, his father's sister, his mother's sister, his sister, his daughter, the daughter of his brother or sister, the daughter of his son or daughter, his father's wife, his wife's daughter, the daughter of his wife's son or daughter.

"Sec. 5647. No woman shall marry or have sexual intercourse with her father, her father's brother, her mother's brother, her brother, her son, the son of her brother or sister, the son of her son or daughter, her mother's husband, her daughter's husband, her husband's son, the son of her husband's son or daughter.

"Sec. 5648. Whoever shall commit any offense mentioned in the preceding sections, shall be deemed guilty of incest, and shall undergo confinement in the penitentiary for a period of not less than five nor more than twenty-one years."

"Sec. 3290. Marriage can not be contracted with a lineal ancestor or descendant nor the lineal ancestor nor descendant of either parent, nor the child of a grandparent, nor the lineal descendant of husband or wife, as the case may be, nor the husband or wife of a parent, or lineal descendant."

The chief contention of appellant is that, although the marriage in question was prohibited by the laws of Tennessee, yet the same was not absolutely void, and, this being true, and the marriage not having been adjudged void during the life of the parties, that it must now be treated and held to be a valid marriage. This proposition is very ably argued by the appellant, and many authorities are cited to sustain the contention. It may be conceded that, if the marriage was not absolutely void at the time that the solemnization of the alleged marriage occurred, after the death of the parties it must be recognized and treated as a valid marriage, and the appellant regarded as the legal widow of decedent. Appellant cites Stevenson v. Gray, 17 B. Mon., 193, in support of her contention. In that case Gray had married the widow of his deceased uncle. He was then a citizen of Kentucky, but the mar-

riage occurred in the State of Tennessee. At that time there was no law in Tennessee prohibiting such marriages. But the law of this State at the time of the marriage forbade such marriage; but at the hearing of that case no such statute existed in Kentucky, and the court declined to hold the marriage invalid. Hence the decision in that case does not support the contention of appellant. It is said in 14 Am. & Eng. Enc. Law, 484: "A marriage may be valid to all intents and purposes unless and until duly avoided, but, if duly avoided, absolutely void from the be· ginning. To this class belong marriages which, for incapacity of party existing at the time of the marriage, may be avoided under the ecclesiastical law or under special statutes; by a special proceeding instituted within a specified time; i. e. by a nullity suit. A marriage may be void for all intents and purposes unless and until duly confirmed, but, if duly confirmed, valid ab initio. To this class belong marriages which for incompleteness or unreality of consent are void as wanting the essential contract, and which are inchoate and incomplete, rather than voidable, marriages. It is therefore very important to have some means of determining to which class of marriages a given imperfect or illegal marriage belongs, and there are certain rules of construction which may be useful for this purpose, to-wit: (1) Unless by express words a statute goes to the validity of a marriage (i. e. unless there are words of nullity), it will be held to affect the legality of the marriage only. Thus, a statute providing simply that a white and a negro shall not intermarry was held not to render such marriage invalid." It is true that the Tennessee statute does not expressly say that a marriage between uncle and niece is void, but it does expressly prohibit such marriages, and provides that persons vio-

McIlvain v. Scheibley and others.

lating the law shall be guilty of felony, and confined in the penitentiary for a number of years. Hence it seems to us that, taking the statutes relating to such marriages, the necessary meaning and intent were to render such marriages absolutely void. It would be strange indeed if a marriage could have any validity, and yet the parties by continuing the marriage relation would be guilty of a felony, and constantly liable to be convicted and sentenced to the penitentiary. The decisions of the Supreme Court of Tennessee referred to in the agreement seem to so construe the statute of the State practically the same as the case at bar. But, without reference to any such decisions, we are of opinion that the statutes under consideration render the marriage in question absolutely void.

The contention of appellant that the executed agreement to live together as husband and wife vested the wife with marital rights is not tenable. Robinson v. Redd's Adm'r (Ky.), 43 S. W., 435.

It is further contended for appellant that the appellees, having obtained the probate of the will, and claiming under it, are estopped to deny the rights of appellant, who is by the said will recognized as the widow of decedent. We can not concur in this contention. The appellees are not seeking to nullify the will, but in fact, so far as this record appears, are consistently adhering to, and are ready and willing to comply with all its requirements, and execute the same fully as therein provided. The attempt of appellant to renounce the provisions of the will, upon the idea that she was the legal widow of the decedent, is ineffectual for any purpose, and the will remains in full force and effect to the same extent as if such effort had not been made. Although appellant is not in law the widow of decedent, yet he had a right to devise to her such

an interest or portion as he wished to; and, so far as appears in this record, the appellant will be entitled to a support out of his estate suited to her station in life. Hence it is clear that the appellees are not seeking to hold under and against the will.

We are inclined to the opinion that this court has a right to determine the true meaning of a statute of a sister State, when an official copy thereof is offered in evidence; but, even if this were not so, we think a fair construction of the agreement filed is to authorize the court to consider and construe the statute in question. Judgment affirmed.